THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 14 CR 30007-MJR |
| | ) |
| OSVALDO GONZALEZ, | ) |
| | ) |
| Defendant. | ) |

## STIPULATION OF FACTS

Comes now Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois through Scott A. Verseman, Assistant U.S. Attorney for this District and herewith enter into the following Stipulation of Facts with the Defendant, Osvaldo Gonzalez, represented by his attorney, Bobby E. Bailey, pertaining to the conduct of the Defendant charged in the indictment in this case and the relevant conduct of the defendant within the scope of U.S.S.G. § 1B1.3.

1. Beginning in approximately 2008, and continuing off and on until at least May 19, 2011, Defendant worked at a telemarketing business based in Orlando, Florida. This business was owned and operated by an individual named Leandro Velazquez. The telemarketing business operated under several different names, including:

   A. National Solutions LLC ("National Solutions"), which also did business as Blue Scape Timeshares International, Country Wide Timeshares, Countrywide Timesharesales MA, Landmark Timeshares, Propertys Direct, Quicksale Propertys, Sun Property Networks, Sun Property's, Universal Propertys, and VIM Timeshares. National Solutions used a mail drop at 11310 S. Orange Blossom Trail, Orlando, Florida, as its registered address.

   B. Landmark Marketing LLC ("Landmark Marketing"), which also did business as Blue Scape Timeshares, Country Wide Timeshares International, Propertys DRK, Quick Sale

1

Advisers, Quick Sale International, and University Propertys International. Landmark Marketing used a mail drop at 2223 SW 13th Avenue, Miami, Florida, as its registered address.

  C. Red Solutions LLC ("Red Solutions"), which also did business as City Resorts and Resort Advisors.

  D. Enterprise America, LLC ("Enterprise America"), which also did business as American Timeshares, Exit Week, and Resort Advisors International, and which used a mail drop at 11310 S. Orange Blossom Trail, Suite 156, Orlando, Florida, as its registered address.

  E. Investments Group of Florida, LLC ("Investments Group"), which also did business as Resort Advisors AM.

  F. MultiGlobe LLC ("MultiGlobe"), which also did business as Universal Propertys and which used a mail drop at 1750 Sand Lake Road, Orlando, Florida, as its registered address.

(For ease of reference, these companies are referred to as "National Solutions" throughout the remainder of this document, regardless of what specific name the company was using at any particular time.)

  2. During the time he worked at National Solutions, Defendant knowingly and willfully conspired with the owner, managers, and other employees of National Solutions to commit an offense against the United States, namely to devise and participate in a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, and attempting to do so, knowingly to cause items to be sent and delivered by United States Mail to addresses located throughout the United States, including the Southern District of Illinois, and knowingly to cause telephone calls, internet communications, credit card transactions, electronic fund transfers, and

2

other signals to be transmitted in interstate and foreign commerce by means of wire and radio communication, including interstate telephone calls between employees of National Solutions and consumers located in the Southern District of Illinois.

3. National Solutions was a scam which defrauded consumers throughout the United States.

4. National Solutions purported to be in the business of marketing and selling used timeshares.

5. National Solutions deceived timeshare owners into believing it had located buyers for their timeshares. National Solutions then tricked the owners into paying large upfront fees for the purported purpose of completing the sales of their timeshares.

6. Defendant and other National Solutions salespersons placed unsolicited telemarketing calls to timeshare owners. Typically, Defendant and the other salespersons called owners who had listed their timeshares for sale with other companies.

7. Defendant and the other National Solutions salespersons typically began the calls by falsely telling the victims that they had buyers who were interested in purchasing the victims' timeshares. Often, Defendant and the other salespersons told the victims that their buyers were willing to pay an amount that was at or near the price that the victims had previously asked for when marketing their timeshares.

8. After confirming that the victims were interested in selling their timeshares, Defendant and the other National Solutions salespersons told the victims that they would have to pay an upfront fee for the sale to proceed. In some instances, Defendant and the other salespersons falsely told the victims that this fee was required as an "earnest money deposit" to ensure that the victims were committed to selling their timeshares. In other instances, Defendant and the other

salespersons falsely told the victims that the fees were required to pay for various sale-related expenses, such as closing costs, document processing fees, or title searches. Regardless of the reason given, Defendant and the other salespersons falsely told the victims that these fees would be refunded to them at the closings on the sales of their timeshares.

9. In order to further deceive the victims into believing that the transactions were legitimate, Defendant and the other National Solutions salespersons often represented or implied that the transactions would be reviewed and approved by the Federal Trade Commission.

10. The upfront fees charged to the victims ranged from $1,000 to $3,150. Ordinarily, Defendant and the other National Solutions salespersons directed the victims to send a money order or cashier's check via an overnight delivery service, or through the United States mails. National Solutions also accepted payment via credit cards.

11. National Solutions sent contracts to the victims via the United States Mails. Defendant and the other National Solutions telemarketers instructed the victims to sign these contracts and return them to National Solutions. Defendant and the other salespersons described these contracts as a "sales agreements" or "seller's documents."

12. Contrary to what Defendant and the other salespersons represented, these contracts were not "sales agreements" or "seller's documents." The fine print of these contracts indicated that the victims were agreeing to pay a one-time, non-recurring fee for advertising their timeshares for sale with National Solutions.

13. Many victims signed and returned the contracts to National Solutions without reading them. Victims who noticed the advertising language and called the company to inquire or complain were told by Defendant and the other salespersons to ignore the fine print, and that the contract was a standardized form contract. Defendant and the other telemarketers then falsely

reassured the victims that there were buyers who were ready to proceed with the purchases of their timeshares. Relying on these representations, many of the victims who were initially reluctant signed the contracts and returned them to National Solutions via the United States Mails.

14. After receiving the victims' payments and signed contracts, Defendant and the other National Solutions salespersons usually did not contact the victims again. The promised dates for the closings on the victims' timeshares typically passed without anyone from National Solutions contacting the victims.

15. When victims called to inquire about the sales of their timeshares, National Solutions' employees lied to the victims and tried to convince them that the sales of their timeshares were still proceeding. The National Solutions employees provided a variety of false excuses for why the sales had been delayed, such as some paperwork had not been completed or that there was a problem with the buyer's financing.

16. When victims demanded refunds, their demands usually were denied or went unanswered.

17. The conspiracy and scheme to defraud victimized individuals located throughout the United States, Canada, and other countries. Those victims included individuals who resided in the following counties of the Southern District of Illinois: St. Clair, Madison, Clark, Franklin, Jasper, Massac, and Saline.

18. The conspiracy was conducted in connection with telemarketing.

19. As a salesperson for National Solutions, Defendant used the false and misleading statements described above to make sales. During the time period of 2008 through May 19, 2011, defendant made sales totaling $186,522.

All in violation of Title 18, United States Code, Section 1349 and 2326(1).

SO STIPULATED:

                                                                                  STEVEN D. WEINHOEFT
                                                                                  United States Attorney

_____            _____
OSVALDO GONZALEZ                     SCOTT A. VERSEMAN
Defendant                                            Assistant United States Attorney

_____
BOBBY E. BAILEY
Attorney for Defendant

Date: 11-25-18                                      Date: November 29, 2018